Filed 7/30/26  Barcelo v. Papaya Gaming CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JANE BARCELO et al., | B348956 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 24STCV32626) |
| v. | |
| PAPAYA GAMING, LTD. et al., | |
| Defendants and Respondents; | |
| DANIEL GOLDEN et al., | |
| Movants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Timothy P. Dillon, Judge.  Affirmed.

Whiteford, Taylor & Preston, Spencer Cox, P. Thomas Distanislao; Wilshire Law Firm, Thiago Coelho; Burns Charest and Matthew S. Tripolitsiotis for Movants and Appellants.

Skadden, Arps, Slate, Meagher & Flom, Jason D. Russell and Raza Rasheed, for Defendants and Respondents Papaya Gaming, Ltd. et al.

William J. Edelman for Plaintiffs and Respondents Barcelo et al.

_____

Jane Barcelo and Christina Isernia (plaintiffs) filed a consumer class action against Papaya Gaming Ltd. and Papaya Gaming Inc. (Papaya) alleging that Papaya's gaming website is fraudulent. Five individuals—namely, Daniel Golden, Barbara Miller, Jeremy Ghost, Kortni Koutrakos, and Jill Lastarza (movants)—filed a motion to intervene under Code of Civil Procedure section 387, subdivisions (d)(1) (mandatory intervention) and (d)(2) (permissive intervention).[1] The trial court denied the motion, and movants appealed. We affirm.

## BACKGROUND

Papaya advertises itself as an online gaming platform "where users compete in games of skill against other human users for money." Plaintiffs and movants allege that Papaya "controls the outcome of its gaming platforms and uses its own 'bots' to play against its human players, effectively 'rigging' the game and withholding the winnings for its own financial gain."

In March 2024, movants filed a class action in the United States District Court for the Southern District of New York. They defined the class as "[a]ll U.S. persons who have lost money playing any Papaya game from 2016 until [Papaya's] unlawful

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

conduct and its harmful effects stop."  The parties began settlement discussions in May 2024, and engaged in a formal mediation in July 2024.  The case did not settle.

In August 2024, Papaya successfully moved to compel arbitration, which began in February 2025.

Plaintiffs filed the instant class action in December 2024. Plaintiffs defined the class as "all natural persons in the United States and United States [t]erritories, who had a Papaya account and made a deposit in one or more Papaya games during the [c]lass [p]eriod (between January 1, 2019 and September 5, 2024)," with certain enumerated exceptions.  The parties reached a settlement, subject to court approval, in the amount of $15 million.

In January 2025, plaintiffs filed a motion for preliminary approval of the class action settlement.

In April 2025, movants filed a motion to intervene.  (§ 387, subds. (d)(1) & (d)(2).)  The trial court denied the motion. Movants timely appealed.

Over movants' objections, the trial court granted preliminary approval of the plaintiffs' settlement in October 2025 and final approval in March 2026.[2]  The approved settlement expressly excluded movants from the settlement class.

## DISCUSSION

### I.    Mandatory Intervention

Mandatory intervention is governed by section 387, subdivision (d)(1).  To establish mandatory intervention, a proposed intervenor must demonstrate: (1) the intervenor has an interest relating to the property or transaction which is subject to

---

[2]    We granted movants' motion to augment the record with these postjudgment materials.

3

the action; (2) the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect that interest; and (3) the intervenor's interest is not adequately represented by the existing parties.[3] (*Siena Court Homeowners Assn. v. Green Valley Corporation* (2008) 164 Cal.App.4th 1416, 1423–1424.) It is not settled whether we review a denial of a motion for mandatory intervention de novo or for abuse of discretion. (*Id*. at p. 1425.) We need not resolve this issue because we find no error under either standard. (See *State Water Bd. Cases* (2023) 97 Cal.App.5th 1035, 1043.)

Movants fail to demonstrate they are not adequately represented by plaintiffs' counsel. "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. . . ." (*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1086, citations omitted.)[4] "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. . . . To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation. . . ." (*Citizens for Balanced Use v. Montana Wilderness Assn.* (9th Cir. 2011) 647 F.3d 893, 898, citations omitted.)

Movants do not satisfy this standard. They argue that plaintiffs inadequately represented movants' interests because they colluded with Papaya to reduce the latter's liability to

---

[3]    We consider movants' interest, not their lawyer's interest.

[4]    California " 'may take guidance from federal law' " on the issue of mandatory intervention. (*Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal.App.5th 560, 573.)

4

movants and other class members.  These arguments focus primarily on the adequacy of the settlement fund, which, after fees, awards, and expenses, amounted to approximately $10 million for a class of over four million people.  In other words, movants argue, each class member will receive less than $2.50, notwithstanding potentially available statutory damages that could far exceed that amount.

However, the record shows legitimate explanations for the settlement amount.  For example, plaintiffs' counsel acknowledged that users of Papaya's site "are subject to arbitration agreements that [arguably] subject them to mandatory arbitration and preclude[s] class claims."  Accordingly, plaintiffs' counsel was concerned that "[g]iven the relatively small value of individual damages, most [c]lass [m]embers would recover little to nothing absent this [s]ettlement."  This concern was not unreasonable, given that movants' counsel lost a motion to compel arbitration in New York.  For this reason, we also are not persuaded by movants' argument that plaintiffs' counsel abandoned billions of dollars in statutory damages.

Similarly, movants argue that plaintiffs' service awards are excessive because they are disproportionate to their losses and the average recovery.[5]  In fact, the settlement agreement provides for service awards of only $1,500 for each named plaintiff.  Service awards are "fairly typical" in class actions. (*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948,

---

[5]     A service award is a type of discretionary incentive award "intended to compensate class representatives for work done on behalf of the class[.]"  (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1393–1394.)

958.) These amounts are not so high as to evidence collusion. (See, e.g., *In re U.S. Bancorp Litigation* (8th Cir. 2002) 291 F.3d 1035, 1038 [approving $2,000 incentive awards to class representatives who secured a $3 million settlement for a class that could exceed 4 million].)

Movants also argue that plaintiffs and Papaya colluded by executing a settlement agreement before plaintiffs' complaint was filed, precluding "pre-suit investigation" and "material discovery, motions practice, or litigation of any sort." To the contrary, the record shows that the parties exchanged information during mediation. Papaya provided information about its user base, fee structures, insurance coverage and limits, and its general financial condition. Moreover, it is not uncommon to settle cases before litigation, as it often results in higher settlement amounts (especially in cases subject to arbitration agreements). As the trial court observed, "[i]n a situation with a mass arbitration agreement, counsel may choose to forgo litigation for a number of reasons, including keeping costs down (especially in situations where [the] [d]efendant's financial state prevents it from paying out a large settlement)."

Finally, movants argue that the settlement agreement is coercive because it provides that "if the [s]ettlement is terminated then [p]laintiffs will dismiss this action without prejudice and the [p]arties will resume the arbitration proceedings, not litigate in this [c]ourt." This is not a compelling showing of collusion; it merely reflects the reality that, absent settlement, the parties would be returned to their original positions, meaning this dispute would be governed by the users' arbitration agreements. Plaintiffs' representation is not rendered

inaccurate by their counsel's acknowledgement that, in that scenario, this dispute would be governed by arbitration.

We have considered movants' remaining arguments and find none to be persuasive.[6]  In sum, we agree with the trial court that there is no compelling evidence plaintiffs' counsel provided inadequate representation to intervenors in negotiating this settlement.  At heart, movants merely disagree with plaintiffs' counsel's litigation strategy, which does not justify intervention.  (See *League of United Latin American Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1306.)  Therefore, we find that the trial court correctly denied movants' motion for mandatory intervention.  (See *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (9th Cir. 2020) 960 F.3d 603, 620 [affirming denial of intervention where movant "failed to offer persuasive evidence" that existing party had taken unfavorable positions in the litigation].)

---

[6]  In their reply brief and at oral argument, movants argued that their interests were not adequately represented because they were involuntarily carved out of the settlement class, even though they wanted to remain in the class to object to this settlement.  Movants forfeited this argument by failing to raise it in their opening brief.  (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.)  Nor is it clear movants preserved this issue for appeal before the trial court, as they provide no record that they objected to their exclusion or failed to receive notice and opportunity to be heard on this issue.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court."].)

7

## II. Permissive Intervention

Permissive intervention is governed by section 387, subdivision (d)(2). " ' "[T]he trial court has discretion to permit a nonparty to intervene where the following factors are met: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. [Citation.]" ' " (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 736.) We review the denial of permissive intervention for abuse of discretion. (*Ibid.*)

The trial court found that "intervention at this stage would unnecessarily enlarge and complicate the issues in the case" and "interfere with and delay the court's role in assessing the fairness of the settlement." Specifically, the court found that intervention would cause "substantial delay." The court found that the movants "do not establish a reason to derail the preliminary approval process or show why their presence is needed as parties in this action," because "[p]laintiffs and their counsel are adequate on this record." The court also noted that movants "do not establish collusion or deception." Finally, the court found that "[t]he reasons for permitting intervention do not outweigh the reasons for denying intervention," recognizing that movants "only challenge the adequacy of the settlement. Nothing else."

We find no error in these findings and therefore no abuse of discretion in the trial court's decision to deny permissive intervention. Accordingly, we affirm the court's order.

**DISPOSITION**

The trial court's order denying movants' motion to intervene is affirmed.  Plaintiffs and Papaya are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

GOORVITCH

We concur:


_____, Acting P. J.

CHAVEZ


_____, J.

RICHARDSON